AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Ohio

2015 MAY 20 PM 1:05

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JOSE ALEJANDRO PALACIO | ) | Case No. |
| | ) | |
| | ) | 1:15 MJ 2107 |
| | ) | (M-15-0816-M) |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 2014 to present__ in the county of __Cuyahoga__ in the __Northern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§841(a)(1), (b)(1)(A) and 846 | Conspiracy to possess with intent to distribute heroin |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Ian M. Brock, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 05/20/2015

_____
Judge's signature

City and state: Cleveland, Ohio

Kenneth S. McHargh, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Ian M. Brock, hereinafter referred to as your affiant, currently assigned to the Cleveland Division of the Federal Bureau of Investigation, hereinafter referred to as the FBI, being duly sworn, do state the following:

## INTRODUCTION

1. As a Special Agent of the FBI, your Affiant is an investigative law enforcement officer of the United States of America within the meaning of Title 18 U.S.C. 2510(7). Your Affiant is empowered to conduct investigations and to make arrests for federal felony offenses.

2. Your Affiant has been employed by the Federal Bureau of Investigation for seven years and has been assigned to the Cleveland Division of the FBI for each of those seven years. During that time, your Affiant has been assigned to investigate activities of drug trafficking organizations, drug-related gang and violent crime activities, and other criminal offenses. As a Special Agent of the FBI, your Affiant has participated in narcotics/drug enforcement, and the dismantlement of mid to upper-level drug trafficking organizations. Your Affiant has planned and executed long-term investigative operations which have led to the disruption and dismantlement of criminal street gangs whose revenues centered primarily around the trafficking and distribution of illicit drugs. Those investigative operations have included Title III intercepts of telephone communications and activities.

3.  As a Special Agent in the FBI, your Affiant received basic drug training at the FBI Academy in Quantico, Virginia. Your Affiant has received field training and accrued practical experience in advanced drug-related investigative techniques, which include, but are not limited to, surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation, and interception and analysis of recorded conversations. Your Affiant has been involved in multiple controlled undercover purchases of drug evidence and subsequent arrests of defendants charged with drug-related crimes. Your Affiant has supervised the activities of informants who have provided information concerning controlled substances and organized criminal activities, purchased controlled substances, and supervised consensual monitoring in connection with these investigations. Your Affiant has utilized various forms of tracking technology to assist in various forms of criminal investigation.

## BASIS OF INFORMATION

4.  Except as otherwise noted, the information set forth in this affidavit has been provided to your Affiant, by FBI Agents, NOLETF officers, DEA Agents, or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated,

does not necessarily set forth Affiant's observations but rather has been provided directly or indirectly by FBI Agents, NOLETF Officers, DEA Agents, or other law enforcement officers who conducted such surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS), the State of Ohio or the National Crime Information Center (NCIC), the Ohio Law Enforcement Gateway (OHLEG) computer system, and other known public database computer systems, by members herein described.

5. Since this Affidavit is being submitted for the limited purpose of securing arrest warrants, your Affiant has not included each and every fact known to him concerning this investigation. Your Affiant has set forth only the facts that he believes are necessary to establish the foundation for the issuance of the arrest warrants.

## BACKGROUND OF INVESTIGATION

6. Your Affiant has participated in an investigation involving the Efren Luis Vega, Sr., named but not charged herein, and JOSE ALEJANDRO PALACIO Drug Trafficking Organization (hereinafter referred to as Target DTO) and its associates. The facts and circumstances associated with the Target DTO and its associates have been developed by investigators in both Texas and Ohio since August of 2014. McAllen, Texas area Task Force members became aware, through confidential sources that JOSE

ALEJANDRO PALACIO[1] was participating in large scale drug distribution to northern United States cities that included Cleveland, Ohio. Early in the investigation, PALACIO's drug trafficking associate in the Cleveland, Ohio area was identified as Efren Vega, Sr.[2]

7. On April 3, 2015, United States District Court Judge Donald C. Nugent issued an order granting authority to intercept wire and electronic communications over telephone number (956) 800-9960,[3] known to be used and possessed by JOSE ALEJANDRO PALACIO. Interception of wire and electronic communications over (956) 800-9960 was initiated on April 3, 2015 and continue at present.

8. On April 18, 2015, United States District Court Judge Donald C. Nugent issued an order granting authority to intercept wire and electronic communications over telephone number (216) 832-3702, known to be used and possessed by Efren Vega, Sr. Interception of wire and electronic communications over (216) 832-3702 was initiated on April 18, 2015 and terminated on 05/17/2015, at approximately 11:59 p.m.

9. On May 11, 2015, United States District Court Judge Donald C. Nugent issued an order granting authority to intercept wire and electronic communications over telephone number (917) 604-8052, known to be used and possessed by Efren Luis Vega, Sr. Interception of wire and electronic communications over (917) 604-8052 was initiated on May 11, 2015 and terminated on 05/17/2015, at approximately 11:59 p.m.

---

1 PALACIO is currently on federal supervised release in connection with a prior drug trafficking conviction.
2 Vega, Sr. is currently on federal supervised release in connection with a prior drug trafficking conviction.
3 During the course of intercepting communications over this telephone, JOSE ALEJANDRO PALACIO changed the number from (956) 800-9960 to (956) 800-2395

## **PROBABLE CAUSE**

10. On April 30, 2015, at approximately 10:24 a.m., JOSE ALEJANDRO PALACIO used (956) 800-2395 to call Efren Luis Vega, Sr. on (917) 604-8052. PALACIO said to Vega, Sr., "Hey buddy, it's urgent that I have that address... immediately. Because otherwise I won't be able to send it to you." Vega, Sr. replied, "I'll send it to you right now." Your Affiant believes that PALACIO and Vega, Sr. were attempting to organize the transfer of a drug sample to Vega, Sr. This conversation was originally spoken and recorded in Spanish, and later interpreted by bi-lingual investigators and Spanish language specialists.

11. On April 30, 2015, at approximately 10:32 a.m., Efren Luis Vega, Sr. used (216) 832-3702 to send a text message to JOSE ALEJANDRO PALACIO on (956) 800-2395. The message read: "Jerry safran 4507 W 168st Cleveland Ohio 44135." Your Affiant believes that PALACIO was planning to send VEGA, SR. a drug sample at that address. Efren Luis Vega, Sr. is currently on federal supervised release, and that address is Vega, Sr.'s home address of record with the court by whom he is supervised. This text was originally sent and recorded in Spanish, and later interpreted by bi-lingual investigators and Spanish language specialists.

12. On May 1, 2015, at approximately 3:41 p.m., JOSE ALEJANDRO PALACIO used (956) 800-2395 to send a text message to Vega, Sr. on (216) 832-3702. The message read: "Check it out. The envelope is already there. Check if that Chinese [heroin] is good, to send you the other portion now, so it will arrive early tomorrow."

Your Affiant believes that PALACIO was informing Vega, Sr. that a package had arrived which may have contained a drug sample, and which PALACIO wanted Vega, Sr. to evaluate. This text was originally sent and recorded in Spanish, and later interpreted by bi-lingual investigators and Spanish language specialists.

13. On May 1, 2015, at approximately 4:13 p.m., JOSE ALEJANDRO PALACIO used (956) 800-2395 to call Efren Luis Vega, Sr. on (917) 604-8052. PALACIO asked Vega, Sr., "Have you checked your house? (to see if the package had arrived.)" Vega, Sr. replied, "Yeah, I have it...they brought it over to me." PALACIO continued, "Well, good. I need you to tell me, right now...yes or no?" Vega, Sr. replied, "Yeah, as soon as I get off (work)." PALACIO continued, "No, no. Because we will run out of time." Vega, Sr. replied, "Well, let me call somebody so they can go over, because I'm here at work." PALACIO replied, "Well then, call right away, call me." Your Affiant believes that the two parties were attempting to finalize the shipment of a possible drug sample form PALACIO to Vega, Sr. This conversation was originally spoken and recorded in Spanish, and later interpreted by bi-lingual investigators and Spanish language specialists.

14. On May 1, 2015, at approximately 6:18 p.m., Efren Luis Vega. Sr. used (917) 604-8052 to call JOSE ALEJANDRO PALACIO on (956) 800-2395. PALACIO asked Vega, Sr., "What's going on?" Vega, Sr. replied, "Go ahead!" PALACIO asked, "Is it 100 percent?" Vega, Sr. responded, "Yeah." PALACIO then asked, "What's the price? Sixty?" Vega, Sr. answered, "Yep." PALACIO replied, "Okay." Your Affiant

belives that Vega, Sr. had received PALACIO's drug sample, and was confirming that the sample contained higher quality narcotics, and that $60,000 per kilogram was a fair price to pay for it. This conversation was originally spoken and recorded in Spanish, and later interpreted by bi-lingual investigators and Spanish language specialists.

15. On May 5, 2015, your Affiant and other Task Force members were notified by members of a Package Interdiction Task Force in Cleveland, Ohio, that conduct routine review of incoming United Parcel Service packages, had discovered a suspicious package addressed to Jerry Safran at 4507 West 168th Street in Cleveland, Ohio. Efren Luis Vega, Sr. is currently on federal supervised release, and that address is Vega, Sr.'s home address of record with the court by whom he is supervised. Based upon the probable cause to believe that the package contained contraband, members of the package interdiction Task Force obtained a warrant to open the package, and found approximately 500 grams of suspected heroin. A field test of the contents of the package was positive for the presence of heroin. The package was seized and placed into evidence, pending a submission to a laboratory for full analysis.

16. On May 7, 2015, at approximately 9:09 p.m., JOSE ALEJANDRO PALACIO received an incoming call at (956) 800-2395 from Efren Luis Vega, Sr., at (917) 604-8052. After initial greetings, PALACIO asked, "Did you get addresses or not?" Vega, Sr. replied, "No, not from out there." PALACIO replied, "I'm thinking that I'm going to send you the dude (drug courier) with the fucking truck again." Vega, Sr. replied, "No, don't send that one. No, not that one, because I don't want any trouble."

PALACIO replied, "No, the other one. Not the one that went there (the half kilogram of heroin that was sent by mail and intercepted by law enforcement), rather, the owner of the truck (send the owner of the truck to deliver the narcotics personally)." Vega, Sr. asked, "Here?" PALACIO replied, "That is the, that is, whatchamacallit? The first one, the very first one I sent. The one who got there with the two, man (the individual who previously transported two kilograms of narcotics to you). Do you remember?" Vega, Sr. replied, "Yes." PALACIO then said, "That one, but the other one, the owner, his boss, he says that he has another driver who can go all the way over there (a driver who can transport narcotics from Texas to Ohio). I either send it (the narcotics) over there or I put it in Houston, or I don't know what's going on. But this fucker is all freaked out." Later in the conversation, Vega, Sr. said, "The thing is that it has to be right away, because the people (drug customers) here are all excited and they just want that…" PALACIO interrupted, "Yes, I know, and that one is good, right (the narcotics sample[4] I sent you was good)?" Vega, Sr. replied, "Yes, they are even, they are driving me crazy, man (my drug customers are asking me for more of the heroin from the sample you previously provided me). If I had known, I would not have given them a taste (If I had known the half kilogram you were sending me was going to be intercepted, I would not have provided my customers a sample), because they are driving me nuts now, pestering me, 'what happened (to the heroin)?' I told them, 'calm down, bro, because otherwise, see…' What I did was I got them all excited with that (the sample of heroin). I got them all excited, and now they are like…" PALACIO interrupted, "Yes, I can just imagine

---

4 PALACIO previously sent VEGA, SR. a sample of narcotics, likely heroin. Refer to paragraph 13 herein.

that, and who wouldn't. Everybody makes money with that." Later in the conversation, Vega, Sr. said, "Look here, I have a person who can go all the way over there, to Houston (I have a courier who can drive from Ohio to Houston and pick up narcotics)." PALACIO replied, "Oh, really? That's a good thing." Later in the conversation, Vega, Sr. said, "The thing is to keep on working (keep selling narcotics). Otherwise, then, you know." PALACIO replied, "No, the question is, if we are going to continue working (selling narcotics), the only thing is that we need to continue looking for a way (to deliver to Vega, Sr. in Ohio). That shit (narcotics) that we were sending by mail is burned right now. For the meantime, we can't send it (narcotics) that way (by mail). We have to find a way on how to send it." Later in the conversation, Vega, Sr. said, "It's fucked up, and those two that came here that time (two kilograms of narcotics you previously provided me), do you remember?" PALACIO said, "That's what I mean. That's the man that I'm telling you that I want to send over there (the individual I want to deliver narcotics to you is the same individual who previously delivered two kilograms of narcotics to you)." Later in the conversation, Vega, Sr. asked, "Whatever happened to that cocksucker (drug courier) who was supposedly coming down over here (Ohio). Do you remember? The one that you called me about on Sunday that you were sending so I could...the one that I sent you money (the courier I paid to deliver narcotics to me in Ohio)." PALACIO replied, "That's the one I'm telling you about, who has me worried, because the guy is over there (in Ohio). So this guy is saying, 'Hey, listen here. Is your friend (Vega, Sr.) alright? Could he have a tail (is law enforcement watching him)?' That is, do you get it?" Vega, Sr. replied, "Uhm-hum." PALACIO then said, "That is, he is freaked out. I

don't know how to say that. I don't know what you call it. He's freaked out. He says, 'How about if your friend has a tail, and when I deliver his five (kilograms of heroin), they can (unintelligible) me or something (what if I get arrested trying to deliver five kilograms of heroin to VEGA, SR. because law enforcement is watching him)?' I tell you, he is, I'm telling him that everything is alright." Later in the conversation, Vega, Sr. asked, "Where is he (the courier)?" PALACIO said, "Well, he is where you are at (Ohio)." Vega, Sr. replied, "Oh, really? And how come you didn't tell me?" PALACIO replied, "Because I didn't tell you that he is all freaked out. That he doesn't want to deliver them (the five kilograms of heroin)." Later in the conversation Vega, Sr. stated, "You have to explain to him that I'm not at that address (I'm not at the address where the half kilogram of heroin was going before it was intercepted by law enforcement)." PALACIO replied, "I've already explained that to him, and he doesn't understand. He doesn't understand or he doesn't want to understand." Later in the conversation, Vega, Sr. said, "Tell him to leave it (the five kilograms of heroin). If he doesn't want to see me, have him leave it somewhere, and to say where it is and I will go and pick it up." Later in the conversation, PALACIO said, "I know, I know that it's easily done, but well, they (the couriers) are very cautious, very careful." This conversation was originally spoken and recorded in Spanish, and later interpreted by bi-lingual investigators and Spanish language specialists.

17.     On May 11, 2015, at approximately 10:23 a.m., JOSE ALEJANDRO PALACIO used telephone 956-800-2395 to call Efren Luis Vega, Sr. on telephone 917-

604-8052. PALACIO complained to Vega, Sr. that a business associated with PALACIO had been investigated by law enforcement several days earlier, and PALACIO feared that the law enforcement attention upon PALACIO had been due to the half kilogram seizure of heroin in Cleveland, Ohio. PALACIO told Vega, Sr., "They hit on the damn lot because of that damn envelope. The police came, the dogs and everyone else. They came to my house, and they searched it. In other words...it's no damn game dude. I have to be careful..." Vega, Sr. replied, "But why, why did they come to your house if that came with another name? (Why would the police be suspicious of you if the seized package came from a false name?)" PALACIO replied, "Why? Because, remember the guy they took, the one I told you they caught? Well I don't know if he's the one that is making all this mess, and that's why the damn envelope was lost[5]. He knows where I live, about my lot, he knows everything about me. In other words, I have to be careful and if I don't answer (when you call), it's because I'm being careful. In other words, I'm not playing. I've lived my entire life in narcotics, all my fucking life.... I work hard, but no one wants to go there near you because, it's very hot where you are (no one wants to deliver drugs to you because of possible law enforcement scrutiny), no one wants to go, and I spend my time like a damn idiot looking for someone to go there for you. (I'm working hard to find a courier willing to drive narcotics there for you.)" Vega, Sr. agreed, and PALACIO continued, "...You also need to understand that, I always send you...I trust you with

---

5 Investigators believe that PALACIO was making a reference to an individual who is known to have recently been arrested in Texas, and who PALACIO believes was acting as a confidential law enforcement informant. PALACIO seems to suspect that the arrested person had informed law enforcement of his practice of using commercial shipping to transport narcotics, and that led to seizure of heroin described above.

$100-200,000.00 dollars,...and you have taken a long time (to pay me back) and, there have been times when you haven't even answered me, and when have I acted like that with you. I never have[6]." PALACIO then reiterated, "No one wants to go back there (to Cleveland)." Vega, Sr. explained to PALACIO that he and his associates should not be so afraid to go to jail, and PALACIO replied, "Look, look, the one that has lost more money sending it to you is me, not you? (I am the person who lost money on the seized heroin package) Am I wrong? Just tell me, am I wrong?" Vega, Sr. replied, "I know, but that's how it is." PALACIO replied, "Alright? And, do I give you that same attitude? The opposite! You know what? I look for a way to find a way to send you more, don't I? I lost fifty thousand plus dollars and I'm not going to send you anymore?... I swear I'm looking for a way to send you more. (I'm hoping to find a way to send you more narcotics.) This conversation was originally spoken and recorded in Spanish, and later interpreted by bi-lingual investigators and Spanish language specialists.

## SUMMARY AND CONCLUSION

18.    Based on your Affiant's training, experience and the facts set forth in this Affidavit, your Affiant believes that there is probable cause to believe that Efren Luis Vega, Sr., not charged herein, and JOSE ALEJANDRO PALACIO did knowingly and intentionally conspire to possess with the intent to distribute heroin, a schedule I

---

6 This comment by PALACIO is a reference to several acrimonious text messages sent to PALACIO by Vega, Sr. in which Vega, Sr. was complaining about PALACIO's unwillingness to pay back money that Vega, Sr. had sent to PALACIO, likely to pay for the services of a drug courier.

controlled substance, in violation of Title 21, U.S.C., Section 841(a)(1)(b)(1)(A), and of Title 21, U.S.C., Section 846.

*[signature]*

**Ian M. Brock**
Special Agent
Federal Bureau of Investigation

This and the preceding 12 pages were sworn to and subscribed before me, this 20th day of May, 2015.

*[signature]*                                                         Time: 1:03 PM

KENNETH S. McHARGH
United States District Court Magistrate Judge
Northern District of Ohio